[No. F069953. Fifth Dist. Dec. 11, 2015.]

ARTYUN VARDANYAN, Plaintiff and Appellant, v.
AMCO INSURANCE COMPANY, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rule 8.1105(c), this opinion is certified for publication with the exception of parts VI. and VII. of the Discussion.

## COUNSEL

Kerley Schaffer, J. Edward Kerley, Dylan Schaffer; Hereford Kerley, J. Edward Kerley; Law Office of Dylan Schaffer and Dylan Schaffer for Plaintiff and Appellant.

Amy Bach and Daniel Wade for United Policyholders as Amicus Curiae on behalf of Plaintiff and Appellant.

Hines Hampton and Brian L. Pelanda for Defendant and Respondent.

## OPINION

**HILL, P. J.**—Plaintiff appeals from the judgment entered after the trial court granted defendant's motion for directed verdict in this action alleging breach of an insurance contract and bad faith denial of coverage. The trial court expressed its intention to instruct the jury that plaintiff's property damage loss was covered by his policy only if it was caused by perils specifically listed in the collapse coverage provision and no others. Because it was undisputed that other perils contributed to some extent to the loss, plaintiff conceded he could not prevail if the jury was so instructed. The trial court also granted defendant's motion for a directed verdict on plaintiff's claim for punitive damages. Plaintiff appeals, contending the trial court's intended jury instruction violated the efficient proximate cause doctrine and there was sufficient evidence to permit the jury to determine whether plaintiff met his burden of proving his claim for punitive damages. We find no error in the ruling on the punitive damages claim. We find merit in plaintiff's challenge to the proposed jury instruction. Accordingly, we reverse and remand for retrial of plaintiff's causes of action alleging breach of contract and breach of the covenant of good faith and fair dealing, but not the claim for punitive damages.

### *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff owned a rental house covered by an insurance policy issued by defendant. On December 6, 2010, he submitted a claim that stated plaintiff believed there was water damage to the flooring that might have come from the walls, and there was mold as well. Defendant sent an independent insurance adjustor, Douglas Hoppe, to investigate the claim the next day. Hoppe viewed the condition of the house and took photographs. His initial report stated the house seemed to be settling, possibly due to a water leak. The floors in some of the rooms were sinking, the bathtub was sinking, water was drizzling out of both the shower head and the bathtub faucet, the front door would not open, and there was mold in every room. Plaintiff told the adjustor the tenants had reported the problem to him two or three months before, and he had asked them to move out so repairs could be made. Plaintiff reported his claim to defendant after the tenants moved out.

The independent adjustor recommended defendant have an engineer inspect the house. In January 2011, Michael Jundt, a structural engineer, inspected the site and took photographs; he returned later, with plaintiff's permission, to cut a hole in the floor to gain access to the subfloor area and investigate conditions below the house.

Jundt's report reflected multiple potential leaks in the roof, gutters in disrepair, downspouts that originally deposited water at the base of the walls

of the house, but had become disconnected from the gutters, and evidence that a faucet or hose had been spraying the wall in one area for a significant length of time. He found water damage corresponding to these areas. Jundt reported the toilet and bathtub both leaked, and the floor beneath the bathtub had sunk two and a half inches. The northwest bedroom had a depression in the floor, eight inches deep and five to six feet across; there was damage due to leakage from the toilet in the closet of that bedroom. The closet in the southwest bedroom showed evidence of past damage and multiple repairs. The kitchen was water damaged and showed evidence of past termite infestation. The wood at the base of the back door to the kitchen and the utility room floor near the exterior door were also rotted and damaged by past termite infestation. The living room floor was not level and was separating from the wall.

The subfloor area lacked adequate ventilation, preventing the moisture below the house from drying. Jundt opined the original construction of the subfloor area without proper ventilation was not up to code at the time of construction. The various sources of moisture—roof leaks, gutters and downspouts that did not channel the water away from the house, a faucet spraying water on the exterior of the house, leaking toilet and bathtub, and humidity—contributed to the damage to the house, along with poor construction, termite damage and decay.

Defendant denied coverage of plaintiff's loss, citing multiple policy exclusions, including exclusions for damage caused by seepage or leakage of water from a plumbing system, deterioration, mold, wet or dry rot, settling of foundations, walls or floors, earth movement, water damage, neglect, weather conditions, acts or decisions of any person, and faulty or defective design, workmanship, repair, construction, or maintenance. Plaintiff then retained a public adjustor, Michael DeCesare, to assist him in his claim. DeCesare wrote to defendant and expressed his disagreement with defendant's conclusion that the loss was not covered by the policy.

Dissatisfied with defendant's response to DeCesare's communications, plaintiff filed suit against defendant, alleging breach of the insurance contract and breach of the implied covenant of good faith and fair dealing. Plaintiff alleged the house collapsed and the policy provided coverage for collapse. The policy, excluded coverage for collapse, "other than as provided in OTHER COVERAGES 9." "Other Coverage 9" provided coverage for losses involving collapse of a building or part of a building "caused only by one or more" of a list of perils, including hidden decay, hidden insect damage, and weight of contents, equipment, or people.

At trial, Hoppe testified to the damage he observed in his investigation of the loss. Jundt testified to his investigation of the loss and gave his opinions

regarding the causes of the damage to plaintiff's house. Testimony from plaintiff and the former tenants addressed the condition of the house prior to the time plaintiff reported the damage to defendant.

Plaintiff's expert, Robert Bresee, a general contractor, testified to perceived errors in Jundt's report, and to his opinions of the condition of the house and the cause of the damage. He had to open up the floor to investigate the cause of the damage. He noted the floors in the northwest bedroom and the living room were resting on the ground, and opined the cause was dry rot, decay, and termite damage. He opined the water in the subfloor area came from within the walls, where it was not readily visible to occupants of the house.

The evidence presented by both sides indicated there were multiple causes of the damage to plaintiff's house. Plaintiff's theory was that the coverage for collapse due to hidden decay or hidden insect damage applied, if either of those perils was the predominant cause of the collapse of the structure. Plaintiff requested that the trial court give a standard jury instruction explaining that, when a loss is caused by a combination of covered and excluded risks, the loss is covered if the most important or predominant cause is a covered risk. (CACI No. 2306.) Defendant instead proposed a special jury instruction (No. 12) placing on plaintiff the burden of proving the collapse of the house was "caused *only* by one or more" of the perils listed in Other Coverage 9. Defendant's special instruction No. 12 specified that there was no coverage if the cause of the collapse involved any peril other than those listed. Plaintiff opposed giving the special instruction proposed by defendant.

When the trial court indicated its intention to give part of defendant's proposed special instruction No. 12, plaintiff indicated that giving such an instruction was tantamount to directing a verdict in favor of defendant because there was no dispute the damage to the house was caused by perils in addition to those listed in Other Coverage 9. Defendant then moved for a directed verdict on both causes of action. The trial court granted the motion, concluding defendant's proposed special instruction was legally correct, based on the unambiguous language of the Other Coverage 9 provision of the policy. The trial court entered judgment in favor of defendant, and plaintiff appeals.

## *DISCUSSION*

### I.   *Standard of Review*

A directed verdict is reviewed de novo. (*Brassinga v. City of Mountain View* (1998) 66 Cal.App.4th 195, 210 [77 Cal.Rptr.2d 660].) " 'On appeal from a judgment on a directed verdict, appellate courts view the evidence in the light

*most favorable to appellant.* All conflicts must be resolved and inferences drawn in appellant's favor; and the judgment will be reversed if there was substantial evidence . . . tending to prove all elements of appellant's case.' " (*Colbaugh v. Hartline* (1994) 29 Cal.App.4th 1516, 1521 [35 Cal.Rptr.2d 213].) Interpretation of statutes and contracts is also reviewed de novo. (*Morgan v. United Retail Inc.* (2010) 186 Cal.App.4th 1136, 1142 [113 Cal.Rptr.3d 10]; *Consolidated World Investments, Inc. v. Lido Preferred Ltd.* (1992) 9 Cal.App.4th 373, 378 [11 Cal.Rptr.2d 524].)

## II.   *Contract Provisions*

Plaintiff's insurance policy indicated coverage A covered his dwelling. The basic insuring provision of the policy, defining "PERILS INSURED AGAINST," stated:

"We insure for risk of direct physical loss to the property described in Coverages A and B except

"1 collapse other than as provided in Other Coverage 9 . . . ."

The Other Coverage 9 section contained a list of six items:

"**9 Collapse** We insure for risk of direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following

"a Perils Insured Against in Coverage C Personal Property These perils apply to covered building and personal property for loss insured by this other coverage

"b hidden decay

"c hidden insect or vermin damage

"d weight of contents equipment animals or people

"e weight of rain which collects on a roof

"f use of defective material or methods in construction remodeling or renovation if the collapse occurs during the course of the construction remodeling or renovation."

The "GENERAL EXCLUSIONS" section of the policy contained exclusions for earth movement, water damage, neglect by the insured, inadequate

or defective design, workmanship, construction, remodeling, or materials, and inadequate or defective maintenance.

Plaintiff contends Other Coverage 9 provides coverage for the damage to his house because the building, or part of the building, collapsed and the predominant cause of the loss was hidden decay and hidden insect damage. Plaintiff contends that, pursuant to the efficient proximate cause doctrine, because the predominant cause of the loss was a covered peril, the policy provides coverage for the loss despite any other peril that contributed to the loss, and the trial court should have determined that a jury instruction to that effect should have been given.

III. *Efficient Proximate Cause Doctrine*

■ In California, the efficient proximate cause doctrine is "the preferred method for resolving first party insurance disputes involving losses caused by multiple risks or perils, at least one of which is covered by insurance and one of which is not." (*Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 753 [27 Cal.Rptr.3d 648, 110 P.3d 903] (*Julian*).) It is codified in Insurance Code section 530, which provides: "An insurer is liable for a loss of which a peril insured against was the proximate cause, although a peril not contemplated by the contract may have been a remote cause of the loss; but he is not liable for a loss of which the peril insured against was only a remote cause."

Insurance Code section 532 appears to conflict with Insurance Code section 530: "If a peril is specially excepted in a contract of insurance and there is a loss which would not have occurred but for such peril, such loss is thereby excepted even though the immediate cause of the loss was a peril which was not excepted." (Ins. Code, § 532.) The Supreme Court resolved the apparent conflict between these sections in *Sabella v. Wisler* (1963) 59 Cal.2d 21 [27 Cal.Rptr. 689, 377 P.2d 889]. In *Sabella*, the insurer relied on Insurance Code section 532 in arguing that, if the loss would not have occurred " 'but for' " the excluded peril, then the exclusion precluded coverage for the loss. (*Sabella*, at p. 33.) The court rejected that argument: "[I]f section 532 were construed in the manner contended for by defendant insurer, where an excepted peril operated to any extent in the chain of causation so that the resulting harm would not have occurred 'but for' the excepted peril's operation, the insurer would be exempt even though an insured peril was the proximate cause of the loss." (*Ibid.*) That result would be contrary to section 530, which provided for coverage when the peril insured against proximately caused the loss. (*Sabella*, at p. 33.) The court interpreted the "but for" cause referred to in section 532 to mean the peril that proximately caused the loss, and the " 'immediate cause of the loss' " to mean the peril immediate in time

to the occurrence of the damage. (*Sabella*, at pp. 33–34.) The court established this general rule: " '[I]n determining whether a loss is within an exception in a policy, where there is a concurrence of different causes, the efficient cause—the one that sets others in motion—is the cause to which the loss is to be attributed, though the other causes may follow it, and operate more immediately in producing the disaster.' " (*Id.* at pp. 31–32; see *Garvey v. State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 404 [257 Cal.Rptr. 292, 770 P.2d 704] (*Garvey*).)

The efficient proximate cause referred to in *Sabella* has also been called the predominant cause or the most important cause of the loss. (*Garvey, supra,* 48 Cal.3d at p. 403; *Julian, supra,* 35 Cal.4th at p. 754.) "By focusing the causal inquiry on the most important cause of a loss, the efficient proximate cause doctrine creates a 'workable rule of coverage that provides a fair result within the reasonable expectations of both the insured and the insurer.' " (*Julian,* at p. 754.)

"Policy exclusions are unenforceable to the extent that they conflict with [Insurance Code] section 530 and the efficient proximate cause doctrine." (*Julian, supra,* 35 Cal.4th at p. 754.) Thus, an insurer cannot contract around the efficient proximate cause doctrine to give broader effect to its policy exclusions.

In *Garvey,* the plaintiffs' house was insured with an all-risk homeowners policy issued by the defendant. (*Garvey, supra,* 48 Cal.3d at p. 399.) The policy insured against all risks of physical loss to the property covered, unless coverage was excluded. (*Ibid.*) It excluded losses " 'caused by, resulting from, contributed to or aggravated by any earth movement . . . ,' and losses caused 'by . . . settling . . . of . . . foundations, walls, floors, roofs or ceilings.' " (*Id.* at pp. 399–400.)

An addition to the plaintiffs' house began to pull away from the main structure, and they filed a claim with the insurer. The defendant denied the claim, based on the exclusions for earth movement and settling. (*Garvey, supra,* 48 Cal.3d at p. 400.) The plaintiffs sued, contending the loss was caused by contractor negligence, and such negligence was not an excluded peril under the policy. (*Ibid.*) The court held the efficient proximate cause rule applied to the plaintiffs' first party property damage claim, rejecting application of a concurrent proximate cause rule applicable in third party liability insurance cases. (*Id.* at pp. 405–408.) The court reversed the trial court's directed verdict in favor of the plaintiffs and remanded so a properly instructed jury could decide which peril was the efficient proximate cause of the plaintiffs' loss. (*Id.* at pp. 412–413.)

Thus, although the policy purported to exclude coverage if earth movement or settling merely "contributed to" the loss, the court held the efficient proximate cause doctrine applied, so that the exclusion precluded coverage only if an excluded peril—earth movement or settling—was the efficient proximate cause of the plaintiffs' loss. (*Garvey, supra*, 48 Cal.3d at pp. 403, 412–413.)

In *Howell v. State Farm Fire & Casualty Co.* (1990) 218 Cal.App.3d 1446 [267 Cal.Rptr. 708] (*Howell*),[1] the plaintiff's property was located on a hillside subject to landslides. (*Howell*, at p. 1449.) One summer, a fire destroyed the vegetation on the slope; the following winter, unusually heavy rains combined with the bare slope to cause a landslide, which damaged structures on the plaintiff's property. The plaintiff's expert concluded the landslide probably would not have occurred if the ground cover had not been destroyed. (*Ibid.*)

The plaintiff's homeowners policy insured against accidental direct physical loss to the dwelling and other structures. (*Howell, supra*, 218 Cal.App.3d at p. 1449.) It excluded coverage of loss " 'which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: a) the cause of the excluded event; or b) other causes of the loss; or c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss . . . .' " (*Ibid.*) Earth movement and water damage were on the list of excluded events. (*Id.* at pp. 1449–1450.)[2]

After the plaintiff's insurer denied her claim, she sued; the defendant moved for summary judgment, relying on the exclusions for earth movement and water damage. (*Howell, supra*, 218 Cal.App.3d at p. 1451.) The plaintiff argued the fire was the efficient proximate cause of the loss, because it permitted the landslide to occur. The trial court granted the defendant's motion. (*Ibid.*)

On appeal, the defendant contended the exclusion precluded coverage because the loss would not have occurred but for the excluded peril of earth movement. The court responded: "Stated simply, the important question presented by this case is whether a property insurer may contractually exclude coverage when a covered peril is the efficient proximate cause of the

---

[1] Disapproved on another ground in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 532, footnote 7 [113 Cal.Rptr.3d 327, 235 P.3d 988].

[2] There were also rental dwellings and a commercial kennel on the plaintiff's property. The property damage policies covering those structures contained provisions and exclusions similar to those contained in the homeowners policy. (*Howell, supra*, 218 Cal.App.3d at · pp. 1449–1451.)

loss, but an excluded peril has contributed or was necessary to the loss. We conclude that a property insurer may not limit its liability in this manner, since the statutory and judicial law of this state make the insurer liable whenever a covered peril is the 'efficient proximate cause' of the loss, regardless of other contributing causes. Consequently, the policy exclusions at issue in this case are not enforceable to the extent they conflict with California law." (*Howell, supra,* 218 Cal.App.3d at p. 1452, fn. omitted.) Because there was a triable issue of fact regarding whether the fire or earth movement was the efficient proximate cause of the loss, the court reversed the summary judgment. (*Id.* at pp. 1459–1460.)

A. *Plaintiff's contentions*

Plaintiff contends the language "caused only by one or more of the following" in Other Coverage 9 means that this is a complete list of the perils causing collapse that are covered under the policy. If any one or any combination of the listed perils causes the collapse, the loss is covered. If some unlisted peril contributes to the collapse, the efficient proximate cause doctrine requires that the jury determine which cause is the predominant or most important. If the predominant cause is a peril listed in Other Coverage 9, then the loss by collapse would be covered. If the predominant cause is not a listed peril, then the loss would not be covered.

Consistent with this interpretation, plaintiff requested that the jury be instructed with CACI No. 2306, which provides: "You have heard evidence that the claimed loss was caused by a combination of covered and excluded risks under the insurance policy. When a loss is caused by a combination of covered and excluded risks under the policy, the loss is covered only if the most important or predominant cause is a covered risk."

B. *Defendant's contentions*

Defendant contends "caused only by one or more of the following" in Other Coverage 9 has a more restrictive effect than plaintiff's interpretation gives it. Defendant contends the use of the word "only" means that a collapse is a covered loss only if no peril other than those listed contributes to the collapse. In its view, the decision in *Julian, supra,* 35 Cal.4th 747, authorizes the use of interactive perils to define an exclusion, so it is permissible to cover collapse caused only by one or a combination of specified perils. Defendant contends the efficient proximate cause doctrine does not apply to such a provision. Under defendant's interpretation, if any peril other than those listed in Other Coverage 9 contributes to the collapse in any way or to any degree, then coverage is excluded.

The trial court agreed with defendant and indicated it would instruct the jury with defendant's proposed special instruction No. 12, and would not give CACI No. 2306. Defendant's proposed special instruction, as the trial court intended to give it, states:

"Mr. Vardanyan contends that the damage to his property is covered under the insurance policy's provision for 'collapse' to a building or any part of a building caused by 'hidden decay' or 'hidden insect or vermin damage.'

"If you find that the property or a part of the property collapsed, Mr. Vardanyan bears the burden of proving that the collapse was caused *only* by one or more of the following:

"(1) Fire or lightning; windstorm or hail; explosion; riot or civil commotion; aircraft; vehicles; smoke; vandalism or malicious mischief; damage by burglars; falling objects; weight of ice, snow, or sleet; accidental discharge or overflow of water or steam from within a plumbing, heating, or air conditioning system, or [from] within a household appliance; sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning system, or an appliance for heating water; freezing of a plumbing, heating or air conditioning system or of a household appliance; sudden and accidental damage from artificially generated electrical current;

"(2) Hidden decay;

"(3) Hidden insect or vermin damage;

"(4) Weight of contents, equipment, animals or people;

"(5) Weight of rain which collects on a roof;

"(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

"The insurance policy's coverage for collapse does not apply if the cause of the collapse involved any cause other than those listed above."

IV.   Julian v. Hartford Underwriters Ins. Co.

In *Julian*, heavy rains caused the slope above the plaintiffs' home to fail; this led to a landslide which caused a tree to crash into the plaintiffs' house. (*Julian, supra,* 35 Cal.4th at p. 751.) Their homeowners policy insured

against risks of direct physical loss to property, unless the loss was excluded. The exclusions section provided: " 'We do not insure against loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss: . . . .' " (*Ibid.*) The list that followed included earth movement (defined to include landslide) and water damage. A second exclusion provided a loss was not covered if it was caused by weather conditions. " 'However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in [the prior list] to produce the loss . . . .' " (*Id.* at pp. 751–752.) It was undisputed that losses proximately caused by weather conditions that did not contribute with an excluded cause were covered by the policy. (*Id.* at p. 750.)

The insurer moved for summary judgment, contending the policy excluded each of the perils that might be the efficient proximate cause of the loss: earth movement, third party negligence, and weather conditions that contributed with landslide, an excluded cause. (*Julian, supra,* 35 Cal.4th at p. 752.) The trial court granted the motion. The court summarized the plaintiffs' argument on appeal: "The policy purports to exclude losses caused by weather conditions, but only where weather conditions 'contribute in any way with' earth movement (e.g., landslide), water damage (e.g., flood), or another cross-referenced, excluded peril. Under the plain terms of the policy, losses caused by weather conditions that do not 'contribute in any way with' earth movement, water damage, etc. are covered. Thus the coverage inquiry turns on whether earth movement, water damage, or the like 'contribute[d] in any way with' weather conditions to create a loss. This 'contribute[s] in any way' language, they posit, has the same sweeping and pernicious effect as the policy terms involved in *Howell* and *Garvey* had, in that it allows the insurer to defeat coverage for a loss proximately caused by weather conditions merely by finding a remote peril somewhere—no matter how distant, minor, or independent from the weather conditions—in the causal background. Hartford, meanwhile, argues that the weather conditions clause properly excludes a specific peril, and that neither [Insurance Code] section 530 nor the efficient proximate cause doctrine prohibits it from defining excluded perils as it chooses." (*Julian, supra,* 35 Cal.4th at pp. 758–759.)

The court framed the threshold question as: "whether [Insurance Code] section 530 and the efficient proximate cause doctrine inflexibly prohibit an insurer from insuring against some manifestations of weather conditions, but not others." (*Julian, supra,* 35 Cal.4th at p. 759.) The court concluded they did not. (*Ibid.*) It expressed concern that, in some situations, the " 'contribute in any way with' " language linking weather conditions to other excluded perils could be used to circumvent the efficient proximate cause doctrine. (*Id.* at p. 760.) In *Julian,* however, the court addressed "only the application of

the weather conditions clause to a loss occasioned by a rain-induced landslide." (*Ibid.*) It considered the peril of rain-induced landslide to be "a genuine one, not a mere drafting fiction," and a commonly understood risk of loss. (*Ibid.*) The landslide was not an independent cause of the plaintiffs' loss, but was dependent on the weather condition of heavy rains. The court concluded: "[T]o the extent the weather conditions clause excludes the specific peril of rain inducing a landslide, there is no violation of [Insurance Code] section 530 or the efficient proximate cause doctrine." (*Ibid.*)

## V. *Application to This Case*

### A. *Contract interpretation*

■ "As a question of law, the interpretation of an insurance policy is reviewed de novo under well-settled rules of contract interpretation." (*E.M.M.I. Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 470 [9 Cal.Rptr.3d 701, 84 P.3d 385].) The mutual intention of the parties as it existed at the time of contracting governs interpretation. (Civ. Code, § 1636.) " 'Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.] The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" [citation], controls judicial interpretation.' " (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 18 [44 Cal.Rptr.2d 370, 900 P.2d 619].) " 'Any ambiguous terms are resolved in the insureds' favor, consistent with the insureds' reasonable expectations.' " (*Safeco Ins. Co. v. Robert S.* (2001) 26 Cal.4th 758, 763 [110 Cal.Rptr.2d 844, 28 P.3d 889].) Policy exclusions are strictly construed; exceptions to exclusions are broadly construed in favor of the insured. (*E.M.M.I.*, at p. 471.)

The policy's coverage for plaintiff's house is all-risk or open peril coverage; the policy provides that plaintiff is insured "for risk of direct physical loss to the property," with specified exceptions or exclusions.[3] One of the exceptions to coverage is "collapse other than as provided in Other Coverage 9." As provided in Other Coverage 9, the policy covers collapse caused "only" by one or more of specified perils. As defendant construes this provision, it runs afoul of the efficient proximate cause doctrine. Defendant's construction would exclude coverage any time a peril not listed in Other Coverage 9 contributed to the loss, even minimally. Under defendant's construction, even if the collapse was predominantly caused by a listed peril,

---

[3] "An all-risk policy covers risks of physical loss except those excluded under the terms of the insuring contract. Under an all-risk policy, the limits of coverage are defined by the exclusions." (*Benavides v. State Farm General Ins. Co.* (2006) 136 Cal.App.4th 1241, 1247 [39 Cal.Rptr.3d 650].)

such as hidden decay or hidden insect damage, if an unlisted peril contributed to it in some minor way, coverage would be excluded.

*Julian* does not change the result. The policy provision in issue in *Julian* defined an exclusion from coverage. It took one specified peril and provided that coverage for it was excluded, but only when it combined with specified excluded perils. The court did not hold that the provision was valid in all cases. In fact, it expressed its concern that, under other circumstances, the provision could be used to circumvent the efficient proximate cause doctrine. (*Julian, supra*, 35 Cal.4th at p. 760.) *Julian* held only that the combination of perils in issue in that case effectively created a single peril (rain-induced landslide) that was a genuine peril, understandable to a reasonable insured. Therefore, the court concluded the provision did not violate the efficient proximate cause doctrine.

Here, the policy provision in issue defines coverage, not an exclusion. It provides that collapse is covered if caused by specific listed perils. Under defendant's interpretation, if any of the specified perils combined with any other unspecified peril to cause the collapse, coverage would be excluded. Defendant has not shown that any of the listed perils plaintiff relies on for coverage, when combined with any unlisted peril defendant contends caused or contributed to the loss, created a single peril, that is a genuine peril, and that a reasonable insured would readily understand to be a separate, excludable peril.

■ The combination of a listed, covered peril or perils, with a host of potential unspecified, unlisted perils is in itself problematic. A reasonable insured would not anticipate that a listed, covered peril, if combined with some completely unrelated, unspecified peril, would result in an exclusion of coverage. This is particularly true when the provision is a coverage provision, not an exclusion; a reasonable insured would understand that, if one of the specified perils was the predominant or most important cause of the collapse, the loss would be covered.

Further, the combined peril in *Julian*—rain-induced landslide—was one to which each individual peril contributed substantially. It did not present a situation in which exclusion would result even though the otherwise excluded peril contributed only minimally to the loss, while the otherwise covered peril contributed the lion's share. Here, no such link has been shown between any listed and unlisted perils alleged to have contributed to the loss.

Defendant also cites *Freedman v. State Farm Ins. Co.* (2009) 173 Cal.App.4th 957 [93 Cal.Rptr.3d 296] (*Freedman*) as another case approving the policy exclusion of interactive perils. The *Freedman* court concluded "*Julian* applie[d] straightforwardly" to its case. (*Id.* at p. 962.) We disagree.

In *Freedman*, a contractor drove a nail through a pipe while remodeling the plaintiffs' bathroom. (*Freedman, supra*, 173 Cal.App.4th at p. 959.) The plaintiffs discovered it years later, after corrosion around the nail caused a leak and extensive water damage. The plaintiffs' all-risk policy contained exclusions for corrosion and water damage, including leakage from a plumbing system. (*Id.* at p. 960.) It provided that those exclusions would apply " 'regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss.' " The list that followed included defect, inadequacy, or fault in design, workmanship, or construction of any property, which the court referred to as a third party negligence provision. (*Ibid.*)

When the defendant denied coverage, the plaintiffs sued, contending the contractor's negligence, a covered peril, was the predominant or efficient proximate cause of the loss. (*Freedman, supra*, 173 Cal.App.4th at p. 959.) The defendant moved for summary judgment, contending it did not matter which peril was the efficient proximate cause of the loss because each possible efficient proximate cause was excluded: corrosion, leakage of water, and third party negligence when it interacted with an excluded peril, such as corrosion or leakage. (*Id.* at p. 961.) The court affirmed the trial court's grant of the defendant's summary judgment motion.

The court analyzed the application of *Julian* to its facts as follows: "The third party negligence provisions of the Freedmans' policy exclude third parties' negligent conduct and defective workmanship whenever they interact with an excluded peril, just as the Julians' policy excluded weather conditions whenever they interacted with an excluded peril. Corrosion and continuous or repeated seepage or leakage of water are excluded perils under the Freedmans' policy, just as earth movement was excluded under the Julians' policy. Thus, the Freedmans' policy excludes contractor-negligence-induced corrosion and contractor-negligence-induced continuous or repeated seepage or leakage of water, just as the Julians' policy excluded a rain-induced landslide. The Freedmans have introduced no evidence that contractor negligence caused their loss in any way apart from the nail's role in triggering corrosion and a water leak, just as the Julians introduced no evidence that weather conditions caused their loss in any way apart from rain's role in triggering a landslide. Accordingly, the Freedmans' loss is not covered, just as the Julians' loss was not covered." (*Freedman, supra*, 173 Cal.App.4th at pp. 962–963.)

The Julians' policy excluded weather conditions when they combined with specified excluded perils to cause the loss. The Freedmans' policy, however, did not exclude coverage for third party negligence. Rather, it provided that the exclusions, including the exclusions for corrosion and leakage of water,

would be effective regardless of whether other perils, including covered perils such as third party negligence, combined with the excluded perils to cause the loss. That provision violated the efficient proximate cause doctrine because it would exclude coverage even if the covered peril was the predominant cause of the loss and the excluded peril was a minimal contributing factor.

The *Freedman* court equated "contractor-negligence-induced" corrosion and leakage with the Julians' rain-induced landslide without analysis. The *Julian* court did not conclude that every exclusion of interacting perils in a policy is acceptable and does not violate the efficient proximate cause rule. It stated that, if the exclusion of weather conditions when combined with other excluded perils would permit the insurer to deny coverage when the loss was caused 99 percent by weather conditions and 1 percent by earth movement or water damage, it "would raise troubling questions regarding the clause's consistency with the efficient proximate cause doctrine. Denial of coverage for such a loss would suggest the provision of illusory insurance against weather conditions, raising concerns similar to those implicated in *Howell*." (*Julian, supra*, 35 Cal.4th at p. 760.) The court rejected the insurer's "implicit argument that an insurer's ability to combine otherwise separate perils into a single peril will invariably render [Insurance Code] section 530 and the efficient proximate cause doctrine irrelevant." (*Ibid.*)

The *Julian* court analyzed only the specific combination of perils before it. "Rain inducing a landslide is a commonly understood risk of loss and the frequent and direct causal relationship between rain and landslide is widely and easily understood. The Hartford engineer's report attested that the type of slope failure involved in this case was 'always' caused by water. The landslide here was not an independent causal agent in the Julians' loss; by all accounts it was dependent on· the weather condition of heavy rains. And a reasonable insured would readily grasp the difference between a loss caused by weather conditions alone and a loss caused by weather conditions that induce a landslide, undermining the threat of illusory insurance. Accordingly, *to the extent the weather conditions clause excludes the specific peril of rain inducing a landslide*, there is no violation of [Insurance Code] section 530 or the efficient proximate cause doctrine." (*Julian, supra*, 35 Cal.4th at p. 760, italics added.)

The *Freedman* court did not similarly analyze the peril of "contractor-negligence-induced" corrosion or "contractor-negligence-induced" leakage. It did not discuss whether such combined perils were a commonly understood risk of loss, or whether there was a frequent and direct causal relationship between contractor negligence and corrosion, or between contractor negligence and leakage, that was widely and easily understood. The *Freedman* court simply seemed to assume an insurance policy could exclude any

combination of interacting perils without violating the efficient proximate cause doctrine or Insurance Code section 530, despite the contrary statements in *Julian*.

■    We conclude plaintiff's interpretation of the Other Coverage 9 provision is the correct interpretation, consistent with the efficient proximate cause doctrine. A policy cannot extend coverage for a specified peril, then exclude coverage for a loss caused by a combination of the covered peril and an excluded peril, without regard to whether the covered peril was the predominant or efficient proximate cause of the loss. Other Coverage 9 identifies the perils that are covered when the loss involves collapse. If any other peril contributes to the loss, whether the loss is covered or excluded depends upon which peril is the predominant cause of the loss.    ■    To the extent the term "caused only by one or more" of the listed perils can be construed to mean the contribution of any unlisted peril, in any way and to any degree, would result in the loss being excluded from coverage, the provision is an unenforceable attempt to contract around the efficient proximate cause doctrine.

Accordingly, CACI No. 2306, rather than defendant's proposed special instruction No. 12, was the correct instruction to give to the jury. Because the trial court granted the motion for a directed verdict based on the effect the erroneous proposed jury instruction would have had on plaintiff's case, we must reverse the judgment and remand to the trial court.

### B.   *Burden of proof*

Plaintiff also contends defendant's proposed special instruction No. 12 was improper because it placed on plaintiff the burden of proving his loss fell within the provision of Other Coverage 9, instead of requiring defendant to prove that the loss was excluded. We agree.

"When an issue of coverage exists, the burden is on the insured to prove facts establishing that the claimed loss falls within the coverage provided by the policy's insuring clause. [Citations.] Once the insured has made that showing, the burden is on the insurer to prove the claim is specifically excluded." (*MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.* (2010) 187 Cal.App.4th 766, 777 [115 Cal.Rptr.3d 27].) "[I]n an action upon an all-risks policy . . . (unlike a specific peril policy), the insured does not have to prove that the peril proximately causing his loss was covered by the policy. This is because the policy covers *all risks* save for those risks specifically excluded by the policy. The insurer, though, since it is denying liability upon the policy, must prove the policy's noncoverage of the insured's loss—that is, that the insured's loss was proximately caused by a

peril specifically excluded from the coverage of the policy." (*Strubble v. United Services Auto. Assn.* (1973) 35 Cal.App.3d 498, 504 [110 Cal.Rptr. 828] (*Strubble*).)

In *Strubble*, the plaintiffs' house was insured with an all-risk property insurance policy that included an earthquake endorsement. (*Strubble, supra,* 35 Cal.App.3d at pp. 502, 504.) The house was built on a cliff that had experienced a landslide in the past. After a minor earthquake, the plaintiffs discovered a crack in the ground beneath the house, which began to cause damage to the house and other improvements. The parties disputed whether the cause was earthquake (a covered peril) or other earth movement (an excluded peril). The court held the trial court properly instructed the jury that the defendant had the burden of proving the loss was proximately caused by an excluded peril. (*Id.* at pp. 503–505.) "[D]efendant insurer, in order to establish its defense of noncoverage of its policy, had the burden of proving that plaintiffs' loss was proximately caused by the excluded peril of earth movement other than earthquake (an included peril). To accomplish this defendant insurer had to prove that the included peril of earthquake did not proximately cause the loss that plaintiffs, the insured, suffered. In other words, it had to negative its exception (earthquake) to its exclusion (earth movement) since the burden of proof of its defense of noncoverage of the policy sued on rested on it." (*Id.* at pp. 504–505, fn. omitted.)[4]

CACI No. 2306 is consistent with *Strubble*. After instructing that a loss caused by a combination of covered and excluded risks is covered only if the most important or predominant cause is a covered risk, CACI No. 2306 continues with alternative paragraphs, either placing the burden on the defendant to prove the most important or predominant cause of the loss was a risk excluded under the insurance policy, or placing the burden on the plaintiff to prove the most important or predominant cause of the loss was a risk covered under the policy. The Directions for Use explain that "[f]or all-risk homeowner's policies . . . once the insured establishes basic coverage, the insurer bears the burden of proving the loss was caused by an excluded peril. In contrast, for 'named perils' policies (for example, fire insurance) the insured bears the burden of proving the loss was caused by the specified peril." (Directions for Use, CACI No. 2306.)

Plaintiff's policy provided all-risk coverage for his house. It did not name specific perils insured against. Rather, it provided that defendant covered the house for "risk of direct physical loss to the property," with specified

---

[4] The rule is different when a specific peril policy or a third party liability policy is involved. With those policies, the burden is on the insured to prove that the loss falls within the insuring provisions of the policy. (See, e.g., *Aydin Corp. v. First State Ins. Co.* (1998) 18 Cal.4th 1183, 1190 [77 Cal.Rptr.2d 537, 959 P.2d 1213].)

exceptions and exclusions. One exception was for "collapse other than as provided in Other Coverage 9." Thus, the burden was on defendant to prove not just collapse, but collapse other than as provided in Other Coverage 9. Defendant's proposed special instruction No. 12 instead placed the burden on plaintiff to prove that the collapse fell within Other Coverage 9. Because the instruction improperly shifted the burden of proof, the trial court erred in its decision to instruct the jury with defendant's proposed special instruction and in granting defendant's motion for directed verdict based on the decision to give that instruction.

VI, VII.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## *DISPOSITION*

The judgment on plaintiff's claims for breach of contract and breach of the covenant of good faith and fair dealing is reversed and remanded for retrial. On retrial, the trial court is instructed to enter judgment in favor of defendant on plaintiff's claim for punitive damages, in accordance with the directed verdict already entered.

The parties will bear their own costs on appeal.

Levy, J., and Peña, J., concurred.

---

[*] See footnote, *ante*, page 779.